IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | **Criminal No. 98-287 (CCC)** |
| **FELIX A. MENDOZA-BENITEZ**, | |
| Defendant. | |

### DEFENDANT FELIX A. MENDOZA-BENITEZ'S POSITION IN RESPECT TO SENTENCING FACTORS AND OBJECTIONS TO THE PRESENTENCE REPORT

The Defendant, **FELIX A. MENDOZA-BENITEZ**, through Counsel, Luis Rafael Rivera.Esq. , respectfully moves this Honorable Court to reimpose a two-year term of probation at his sentencing scheduled for August 9, 2005. A sentence of probation is warranted for two reasons. First, a term of probation is appropriate based on the sentencing factors listed at 18 U.S.C. § 3553. Second, a probation term avoids any ex post facto concerns that are raised by the Supreme Court's revision of the guidelines in *Booker*. [1]

### SUGGESTIONS IN SUPPORT

The Defendant plead guilty of conspiring to defraud the United States by adulterating milk,

---

[1] During Mr. Mendoza's direct appeal of his resentence, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Under *Blakely*, Mr. Mendoza's base offense level could not be enhanced, under the then *mandatory* sentencing guidelines regime, on the basis of loss that was construed as relevant conduct not admitted to by Mr. Mendoza during his straight plea. *Booker* now allows a Court to consider such relevant conduct under the now advisory sentencing guideline scheme. As this Circuit held in *United States v. Antonakopoulos*, 339 F.3d 68, 74 (1st Cir. 2005), "[t]he error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system."

in violation of 18 U.S.C. § 371, and causing the delivery of adulterated food into interstate commerce, in violation of 18 U.S.C. §§ 331(a), 333(a)(2) and 18 U.S.C. § 2. The offense conduct alleged in the indictment occurred between August 1995 and July 1997. Based on an adjusted base offense level of 15 and criminal history category of I, the presentence investigation report [herein "PSR"] concludes that Mr. Mendoza's guideline range is 18-24 months. The offense calculation included relevant conduct that was not admitted to by Mr. Mendoza or noted in the indictment. Notwithstanding this advisory range, Mr. Mendoza submits that the previously imposed sentence of probation is appropriate based on the criteria of sentencing factors of 18 U.S.C. 3553(a) and ex post facto issues raised by *Booker*.

**A. In light of Booker the court must now consider the factors enumerated at 18 U.S.C. § 3553(a) as the controlling framework for sentencing**.

*Booker* held that the guidelines were no longer mandatory, and that sentencing courts must now consider all the factors set forth in 18 U.S.C. § 3553(a). 125 S. Ct. 738 (2005). Section 3553(a) is composed of two distinct parts: the sentencing mandate contained in the prefatory clause of 3553(a) and the enumerated factors at 3553(a)(1-7). The overriding principle of 3553(a) that guides the court's evaluation of an appropriate sentence is a limiting one: the court must impose a sentence that is "sufficient, but not greater than necessary" to satisfy the statutory goals of sentencing. Id. The factors include the 1) "nature and circumstances of the offense, and the history and characteristics" of Mr. Mendoza, 2) the need for the sentence to reflect the severity of the offense, deterrence, to protect the public, and to provide Mr. Mendoza with educational, vocational, and correctional treatment in the most effective manner, (A-D), 3) the kinds of sentences available, 4) the sentencing guideline range, 5) the sentencing policy statements, 6) the need to avoid unwarranted sentence disparity, and 7) the need to provide restitution. Id.

**1) The Nature and Circumstances of the Offense, and History and Circumstances of Mr. Mendoza**.

The nature of the offense in this case is similar to other fraud cases. The five (5) Count indictment in this case alleged that Mendoza on five different occasions adulterated milk from his dairy farm with water and salt. The indictment described a scheme between Mendoza, a truck driver from the Dairy processing plant "Tres Monjitas," and infiltrated undercover agent, wherein they would add water and salt into the milk produced at Mendoza's dairy farm and fraudulently maximize the profits paid by the processing plant. The water was used to increase the volume of the milk and the salt masked detection of the water by increasing the weight of the adulterated product. This scheme would result in Mendoza fraudulently obtaining payment from the processing plant for the liters of water and salt he added to the milk. Although the PSR states that the consumers were the ultimate victims of the fraud, the PSR states that ORIL President Luis Fullana-Morales states that "the financial loss to the consumer on the basis of the quality of the distributed milk was minimal as the hotel volume of the adulteration **was insignificant** in comparison to the total amount of quality milk commingled, produced, and distributed." See PSR, at 5-6, ¶ 19 (*emphasis supplied*). Significantly, the only financial gain to Mr. Mendoza from his admitted fraud was the approximate amount of $1,000.

**2) The need for the sentence to reflect respect for the law, adequate deterrence, to protect the public and the need for educational or correctional treatment in the most effective manner.**

A sentence of probation for a person that has accepted responsibility by pleading guilty is by no means a lenient sentence. Mr. Mendoza did not profit from the offense in a monetary sense or otherwise; he simply committed a monumental mistake. Given that this offense stemmed from

Mr. Mendoza's poor judgment, rather than a genuine effort to make money through the fraud, a sentence of probation and the years of anxiety are sufficient to promote respect for the law and to deter the sort of conduct at issue in this case. Though the adulteration of milk is dangerous, the offense conduct in this case did not constitute a deliberate and intentional effort to harm the public. Addressing the source - Mr. Mendoza's meth addiction - of what has driven this conduct through treatment is the most effective way to protect the safety of the public.

**3) The kinds of sentences available.**

Because Mr. Mendoza has been convicted of a Class D and E felonies, which have no statutory minimum terms of imprisonment, a sentence other than imprisonment is authorized. (PSR at 9, ¶ 40). Though the PSR states that a 18-24 month term of imprisonment is the sentencing option in this case under the Guidelines, the Court is required to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). This recognition is consistent with the sentencing principle noted in Section 3553(a) that the court should impose a sentence no "greater than necessary" to satisfy the statutory goals of sentencing.

**4-5) The advisory sentencing guideline range, and the sentencing policy statements**.

As calculated, the sentencing guidelines establish an applicable range between 18 and 24 months. The offense level in this case is driven entirely by an unrealistic estimate of loss. Because the calculation of loss as a measure of culpability is extremely arbitrary, Mr. Mendoza submits that this advisory range does not promote the statutory goals of sentencing. The arbitrary and capricious nature of this measure is demonstrated in several ways. First, the loss estimates do not distinguish that there was no financial loss in this case as the milk was ultimately sold as Grade

A milk. Such a distinction is highly relevant to evaluating Mr. Mendoza's culpability. The PSR's loss estimate does not accurately gauge the degree of harm inflicted on society by this offense because the adulterated milk that was sold by Mr. Mendoza was used by Tres Monjitas, rather than discarded as useless.

Second, the loss estimates in this case were influenced to a large extent by the timing of the federal investigation. For example, the measure of loss in this case is based on adulteration episodes by Mr. Mendoza and a federal agent on five different occasions from August 1993 to sometime in August 1997. Had the prosecution been instituted in August 1993, either by state or federal authorities, Mr. Mendoza might only be facing probation, rather than the 18-months recommended in the PSR. While the prosecutorial delay of several years may have furthered law enforcement's investigation into the scope of the conspiracy, it did so at the expense of Mr. Mendoza.

Mr. Mendoza further submits that the advisory guideline range should carry little weight in the overall sentencing calculus. The guidelines as a whole do not to promote the statutory goals of sentencing, and in fact explicitly disregard many factors that are specifically identified by 18 U.S.C. § 3553(a). The sentencing guidelines have evolved into a skewed system that unduly emphasizes the need for deterrence and retribution while rejecting consideration of the individual circumstances of each defendant and each offense. For example, the guidelines provide that most individual circumstances are usually not even relevant at sentencing. See USSG §§ 5H1.1 (age), 5H1.2 (education and vocational skills), 5H1.3 (mental and emotional conditions), 5H1.4 (physical condition, including drug or alcohol dependence), 5H1.5 (employment records), 5H1.6 (family ties and responsibilities), 5H1.11 (record of miliary, civic, charitable, or public service), 5H1.12 (lack of guidance as a youth).

This myopic focus on the punitive goals of sentencing is demonstrated by how the guidelines address departures. The offense guidelines in Chapter Two are chock-full of suggestions for upward departure, yet contain very few bases for downward departure. No less than forty-nine offense guidelines contain suggestions for upward departure in their commentary. See USSG §§ 2A2.1, A2.4, A3.1, A3.2, A6.1, B1.1, B1.5, B2.1, B3.1, B.3.2, B5.3, C1.1, C1.8, D1.1, G1.1, G1.3, G2.1, G2.2, H4.1, J1.1, J1.3, J1.6, K1.3, K1.4, K2.1, K2.4, K2.5, L1.1, L2.1, L2.2, M3.1, M4.1, M5.1, M5.2, M5.3, N1.1, N1.2, N1.3, N2.1, P1.1, P1.3, Q1.1, Q1.2, Q1.3, Q1.4, Q2.1, R1.1, T1.8, and T2.1. Many of these guidelines contain multiple bases for upward departure, such as Sections B1.1 (nine) and K1.3(five). Of these forty-nine, only five guidelines contain suggestions for downward departure. See USSG §§ 2B1.1, 2M3.1, 2N1.1, Q1.3, and Q1.4.

This one-sided focus on factors that increase the length of prison terms is also evident by how the guidelines treat departures generally. USSG §§ 5K2.0 through 5K2.13 contains thirteen bases for upward departure, but only seven for downward departure. Though the statistical disparity between recognized bases for upward and downward departure is less severe here, an examination of each guideline shows that the discretion afforded the court for downward departure is limited and usually confined to some specific criteria, whereas the discretion granted for upward departure is essentially unconstrained. Compare USSG §§ 5K2.10, 2.13, and 2.20 with 5K2.4, 2.5, 2.6, 2.8, 2.9.

Because the overall punitive nature of the guideline system is plainly inconsistent with the sentencing mandate and factors articulated by 18 U.S.C. § 3553, this Court should treat the advisory guideline range as only one of seven factors to consider in the sentencing process. See *United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005) (Chapter Seven revocation ranges

are merely advisory and record must show court's awareness of sentencing factors in imposing a revocation sentence but court need not "mechanically list every § 3553(a) consideration").

**6) The need to avoid unwarranted sentence disparity.**

A sentence of probation in this case would not create unwarranted sentencing disparity. The statutory applicability of probation as an alternative to a sentence of imprisonment already acts a sufficient check on sentencing disparity by applying to all defendants that are convicted of this offense.

**B. Because Mr. Mendoza's conduct occurred prior to January 12, 2005, the Ex Post Facto and Due Process Clauses limit the manner in which the *Booker* revision of the sentencing guidelines applies in this case.**[2]

The limitations on ex post facto judicial decision-making are inherent in the notion of due process. *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). This prohibition applies both to legislative and judicial branches. Id. at 353-54. The Due Process Clause imposes a limitation on ex post facto judicial construction because it contains the basic principle of "fair warning." Id. at 457. Moreover, the remedial portion of *Booker* essentially functions as a legislative change because the Court inferred a specific savings provision from the guidelines that allowed it to excise certain provisions. This savings clause took effect on the date Booker held the guidelines unconstitutional.

Due process and ex post facto issues are implicated in this case because the remedial portion of Booker eliminated the mandatory nature of the sentencing guidelines. Prior to *Booker* the "statutory maximum" under the mandatory guidelines was the top number of the applicable range.

---

[2] Mr. Mendoza submits this argument in the alternative should the court find that a sentence of more than probation is warranted by consideration of the factors of 18 U.S.C. § 3553.

125 S. Ct. At 749 (quoting *Blakely v. Washington*, 124 S. Ct. 2531, 2537 (2004)). Because *Booker's* revision of the guidelines expanded the penalty that a court could impose, its remedial portion cannot be applied retroactively to Mr. Mendoza's detriment without violating the Ex Post Facto Clause. See *United States v. Bell*, 991 F.2d 1445, 1448-52 (8th Cir. 1993) (guideline amendments that raise applicable range cannot be applied retroactively under Ex Post Facto Clause).

Mr. Mendoza is also entitled, however, to be sentenced in accord with the Sixth Amendment, which requires that a sentence under mandatory guidelines must be based on facts found by the jury or admitted by him. Under this approach Mr. Mendoza is entitled to the benefit of the Sixth Amendment holding of *Booker,* but cannot be disadvantaged by its remedial portion. The Supreme Court approved the propriety of this approach in *Marks v. United States*, 430 U.S. 193 (1977). In *Marks* the Court held that standards for obscenity that expanded criminal liability could not be applied retroactively whereas standards that benefitted a defendant would apply. 430 U.S. at 196 (citing *Miller v. California*, 413 U.S. 15 (1973) and *Hamling v. United States*, 418 U.S. 87, 102 (1974)). Mr. Mendoza admitted during his guilty plea that the victim of his fraud was the Tres Monjitas processing plant. This admission was consistent with the language of the indictment prepared in the case.

## CONCLUSION

For the foregoing reasons, this court should resentence Mendoza under BOL 7, (loss of $51,190.88 with a three level reduction for acceptance of responsibility), criminal history category of I, for a guideline sentencing range of between 0-6 months imprisonment.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this the 8th day of August 2005.

**I HEREBY CERTIFY**: That I on this same date electronically filed the foregoing document with the Clerk of Court for the District of Puerto Rico, through the CM/ECF electronic filing system, which will provide notification of this filing to the United States Attorneys Office for the District of Puerto Rico.

*S/LUIS RAFAEL RIVERA*
*LUIS RAFAEL RIVERA*
*USDC-PR 129411*
*LUIS RAFAEL RIVERA LAW OFFICE*
CAPITAL CENTER BLDG.
SUITE 401
ARTERIAL HOSTOS AVENUE
HATO REY, PUERTO RICO 00918
PHONE: (787) 763-1780
FAX: (787) 763-2145